UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WAYNE MOORE,<br><br>         Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>         Respondent. | Case No.: 18-cv-2867-W<br>      03-cr-850-W<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [DOC. 1021]** |

Pending before the Court is Kenneth Wayne Moore's Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2255 (the "Petition"). Respondent United States of America opposes.

The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1. For the reasons stated below, the Court **DENIES** the Petition [Doc. 1021].

I.  **F<small>ACTUAL</small> B<small>ACKGROUND</small>**

On February 12, 2008, a federal Grand Jury returned a Fifth Superseding Indictment charging Petitioner Kenneth Wayne Moore with Conspiracy to Commit Wire Fraud, Wire Fraud, Conspiracy to Launder Money, Money Laundering, Income Tax Evasion, and False Return. (*See Indictment* [Doc. 812].) Trial began on April 4, 2008.

At trial, the United States presented evidence demonstrating that Petitioner joined a conspiracy to solicit individuals to invest in a fraudulent insurance company, the Good Samaritan Insurance Company ("Good Samaritan"), by making significant misrepresentations. (*Opp'n* [Doc. 1025] Ex. A at 69.) For example, the evidence showed Petitioner failed to disclose to new investors that he previously invested hundreds of thousands of dollars in the company, which resulted in Petitioner having to declare bankruptcy. (*Opp'n* Ex. A at 69.) Petitioner also failed to disclose that all promises made to him while he was an investor were broken. (*Id.* at 69–70.) Evidence also revealed that after joining the conspiracy, Petitioner received into his personal account daily payments over a two-year period totaling $330,000 in 2002 and $279,500 in a short period in 2003. (*Opp'n* Ex. C at 44–45.) These payments represented new investor money resulting from his solicitation. (*Id.*)

On May 14, 2008, the jury returned a guilty verdict on counts 1 through 36. (*May 14, 2008 Min. Entry: Jury Trial* [Doc. 849].) Petitioner was subsequently sentenced to 60 months on counts 1 through 10, 150 months on counts 11 through 35, and 60 months on count 36, to be served concurrently. (*September 15, 2008 Min. Entry: PO Report* [Doc. 886].) Petitioner then appealed and on March 8, 2018, the Ninth Circuit affirmed his conviction and sentence. See United States v. Moore, 365 Fed. Appx. 800 (9th Cir. Feb. 12, 2010) (unpublished). On October 4, 2010, the Supreme Court denied Petitioner's petition for writ certiorari. Moore v. United States, 562 U.S. 908 (2010).

On December 20, 2018, Petitioner filed the Petition under 28 U.S.C. § 2255. (*Pet.* [Doc. 1021].) The Petition raises the following six grounds for relief: (1) discovery of "new evidence" in July 2018; (2) violation of Brady v. Maryland, 373 U.S. 83 (1963); (3) prosecutorial misconduct related to a plea agreement of William Leavitt; (4) prosecutorial misconduct related to two witnesses; (5) a motion to allow intervenors; and (5) judicial misconduct. (*Pet.*)

On February 15, 2019, Respondent filed an opposition asserting that ground one is not a cognizable claim on habeas and that grounds two through six are time barred and

procedurally defaulted.  (*Opp'n* [Doc. 1025] 1–2.)  Petitioner filed his reply on July 17, 2019.[1]  (*Reply* [Doc. 1045].)

## II. DISCUSSION

### A. Ground One

Petitioner claims that in July 2018 he discovered a habeas petition filed by his co-conspirator Ken Kempton.  (*Pet.* at 35.)  Petitioner claims Kempton's petition is new evidence that has some bearing on his innocence and that "[n]ot having this evidence at . . . trial prejudiced [Petitioner] because what [he] did was legal and . . .[he] was not aware of any of the above-mentioned information, nor was [he] aware that [he] was being set up."  (*Id.*)

Newly discovered evidence, "short of proof of actual innocence," is not a cognizable claim on habeas petition.  United States v. Berry, 624 F.3d 1031, 1038 (9th Cir. 2010).  "[A] motion under section 2255 must be based upon an independent constitutional violation."  Id. (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)).  Even new evidence that "casts grave doubt" on the correctness of a conviction is not a ground for relief on collateral attack.  See Conley v. United States, 323 F.3d 7, 14 (1st Cir. 2003).  Rather, Federal Rule of Criminal Procedure 33 is the proper vehicle for a new trial based on newly discovered evidence.

Here, the information in Kempton's petition does not establish Petitioner's innocence for at least two reasons.  First, Kempton's petition does not mention Petitioner, at all.  (*See Kempton Petition* [Doc. 1015].)  Second, Kempton's petition does not negate the substantial amount of evidence presented at trial showing Petitioner's involvement in

---

[1] Petitioner filed a request for an extension of time to file his reply, which was granted on June 10, 2019.  (*June 10, 2019 Order* [Doc. 1040].)  On July 17, 2019, the Court granted Petitioner another extension of time to file his reply.  (*July 17, 2019 Order* [Doc. 1046].)

the conspiracy. (*See id.*) As such, the Court finds Petitioner's claim that Kempton's petition is "new evidence" is not a cognizable under section 2255.

Moreover, even if Petitioner intended to seek a new trial based on new evidence under Federal Rule of Criminal Procedure 33, he must have done so within three years of the verdict. Because he failed to do so, such a motion would be untimely.

### B. Grounds Two through Six Are Time Barred

28 U.S.C. § 2255 provides that "a 1-year period of limitation shall apply to a motion under this section." Relevant to the present action, the limitations period runs from the latest of "the date on which the judgement of conviction becomes final" or "the date on which the facts supporting the claim or claims presented could have been discovered through exercise of due diligence." 28 U.S.C. § 2255. A conviction becomes final upon the Supreme Court's order denying the petition for writ of certiorari. Clay v. United States, 537 U.S. 522, 527 (2003).

Here, Petitioner's judgment became final on October 4, 2010 when the Supreme Court denied his petition for writ of certiorari. See Moore v. United States, 562 U.S. 908 (2010). Because the Petition was filed roughly eight years after his judgment became final, Petitioner must establish that he could not have discovered the basis of his claims until December 22, 2017—one year before filing this petition. Petitioner fails to do so.

In ground two, Petitioner alleges a Brady violation based on the contention that "AUSA Jason Forge deliberately withheld exculpatory evidence in my trial." (*Pet.* 5.) In support of this claim, Petitioner alleges the prosecutor failed to present evidence regarding the value of certain technology: "At the time AUSA Forge presented this [claim that the technology had little to no value] to the Court, he knew this was a lie . . . He knew, at the time of my trial, that this technology had . . . value." (*Id.* at 103) The problem with this argument is that Petitioner then acknowledges he was aware of the technology's value by 2003 and informed his counsel about its value in 2004:

> I am aware of this technology and its significant value, because I witnessed the apparatus being detailed by William Job Leavitt, Jr., in San Diego, in the early part of 2002 and I was present when Dr. Leavitt presented this apparatus in Dallas, Texas on January 28, 2003, where I presided in a meeting called by John Harrell, with over 50 professionals present. [¶] I presented my knowledge of this extremely valuable asset to my retained attorney's law office, in 2004.

(*Id.*) Based on these statements, at the time of his trial Petitioner clearly knew (1) the technology's value and (2) the prosecutor was asserting the technology had little to no value. Accordingly, Petitioner's alleged Brady violation is time barred.

In ground three, Petitioner alleges prosecutorial misconduct arising from Respondent's plea deal with William Leavitt, who Petitioner alleges was a "key defendant." (*Pet.* at 130.) According to Petitioner, "AUSA Jason Forge had cut a secret deal to remove Leavitt from the case and return to Nevada." (*Id.* at 131.) Petitioner alleges this "secret deal" was done in order to make Petitioner the "scapegoat" and was in exchange for 375,000 paid to the prosecutor. (*Id.* at 7, 131.) But on December 22, 2006, a Consent to Transfer of Case for Plea and Sentence was entered in this case. (*See Consent to Transfer* [Doc. 567].) Consistent with its title, the document states:

> I, **WILLIAM LEAVITT**, defendant, have been informed that an indictment is pending against me in [criminal case no. 03cr850-W]. I wish to plead guilty to the offense charged, to consent to the disposition of the case in the District of Nevada in which I am held and to waive trial in the [Southern District of California].

(*Id.*) This document, filed in Petitioner's criminal case more than a year before his trial, notified all parties—including Petitioner—that Leavitt had struck a plea deal and was being "removed" from the case. Accordingly, Petitioner's claim is time barred.

In ground four, Petitioner alleges prosecutorial misconduct involving two witnesses, Christopher Holly and David Kendall. (*Pet.* at 8.) With respect to Holly, Petitioner contends the prosecutor "secretly cut a deal" whereby "Holly refused to appear

5

18-cv-2867-W
08-cr-850-W

and testify to my innocence." (*Id.* at 157.) Petitioner's claim is time barred because during his trial, he knew Holly refused to testify: "I wanted [Holly's] testimony to confirm the money I made his, as his partner. He refused to do so and gave me no reason for this." (*Id.* at 158.[2])

As for Kendall, Petitioner alleges AUSA Forge and "the IRS cut a secret deal with [him] to deliberately lie at my 2008 trial so that he could maintain a special counter to those lies by Kendall." (*Pet.* at 157.) Again, during his trial, Petitioner knew the substance of Kendall's trial testimony and knew it was false: "Kendall [the witness] described me as not reporting my income for years with the IRS. That was a lie." (*Id.*) Because Petitioner knew during his trial about Kendall's alleged false testimony, this claim is time barred.

Petitioner's purported fifth "ground" for relief is entitled, "motion to allow intervenors." (*Pet.* at 180.) This "motion" is intended to "allow for further discovery." (*Id.* at 182.) As an initial matter, the docket indicates that no one has sought to intervene in this case. Regardless, this is not a cognizable claim under section 2255.

Finally, in ground six, Petitioner alleges judicial misconduct. (*Pet.* at 229.) Petitioner claims the Court improperly "kept any mention of Las Vegas out of my case." (*Id.* at 230.) Assuming for the sake of argument the Court "kept any mention of Las Vegas out of [Petitioner's] case," he was aware of this at the time of his trial. Accordingly, this claim is also time barred.

//
//

---

[2] Petitioner also claims prosecutorial misconduct based on AUSA Forge's alleged acceptance of a "deliberate false March 18, 2009 statement [from Holly] to the [FBI] Asset Forfeiture Unit, claiming zero financial gain from being my partner for nearly for years." (*Pet.* at 157.) But Petitioner fails to explain how this statement *to the FBI* affected his trial. Petitioner does not contend the false statement was admitted into evidence at his trial. Moreover, assuming the document was admitted into evidence, Petitioner clearly knew at the time of trial that the statement regarding how much Petitioner paid Holly was false. (*See Pet.* at 158.)

### C. Grounds Two through Six Are Procedurally Defaulted

"[W]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may only be raised in habeas if the defendant can first demonstrate cause and actual prejudice, or that he is actually innocent. Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Murray v. Carrier, 447 U.S. 478, 485 (1986)). "Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" Reed v. Farley, 512 U.S. 339, 354 (1984) (internal quotations omitted).

The United States argues that Petitioner did not raise claims two through six on appeal. (*Opp'n* at 6.) Petitioner's reply does not dispute this and there is no indication in the record that he raised any of these claims on appeal. (*See Reply*) In fact, Petitioner admits he did not raise grounds three and four on appeal and offers no explanation as to why he failed to raise them. (*See Pet.* at 7, 8.) Further, Petitioner has not shown cause, actual prejudice, or actual innocence to justify raising these claims in this proceeding. Thus, the Court finds Petitioner's claims two through six are procedurally defaulted.

### III. CONCLUSION & ORDER

For the reasons stated above, the Court **DENIES** the Petition [Doc. 1021]. The Clerk of the Court shall close the district court file.

**IT IS SO ORDERED.**

Dated: October 18, 2019

Hon. Thomas J. Whelan
United States District Judge